ORIGINAL
CLERK'S COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
U.S. DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FEB 10 1999

CLERK

BILL M. OVERTON,

    Pro Se Plaintiff,

v.    CIVIL NO. 98-CV-1012 JP

UNITED STATES OF AMERICA,

    Defendant.

### MEMORANDUM OPINION AND ORDER

On October 23, 1998, Defendant United States filed its Motion to Dismiss or, in the alternative, for Summary Judgment **[Doc. No. 3]**, which I have concluded should be **GRANTED**.

### BACKGROUND

On or about April 26, 1990, Plaintiff Bill Max Overton ("Overton") filed a 1989 federal income tax return at the Department of the Treasury-Internal Revenue Service ("IRS"). The return showed a tax liability of $0 and withholding credits of $33,812. See Def. Ex. A, 1989 Income Tax Return. The IRS entered these totals into its records, and then issued a refund check payable to Overton in the amount of $33,812.

The IRS subsequently concluded that Overton was not entitled to the $33,812 in withholding credits he had claimed on his 1989 return and reversed the credits. As a result, Overton owed the United States $33,812, plus interest. See Def. Ex. B, Certificate of Assessments and Payments. The IRS so informed Overton in a March 1, 1993 Demand for Payment letter. See Def. Ex. F.

The IRS also reexamined Overton's 1989 and 1990 income tax liabilities. Through a Notice of Deficiency dated February 10, 1993, the IRS notified Overton of claimed additional income taxes, penalties and interest for these years. See Def. Ex. C, Notice of Deficiency.

The IRS determined that for the 1989 tax year Overton owed the United States a total of $44,911. The IRS based its conclusion on the following: Overton allegedly overstated his "expense deduction" in the amount of $83,229 and his "net operating loss deduction" ("NOL") in the amount of $62,014. After applying the proper tax rate to Overton's "corrected taxable income," the IRS determined that there was a $30,519 deficiency in his income tax. To this deficiency the IRS added $14,392 in penalties—$1,526 for not filing within the time limit prescribed by Internal Revenue Code ("I.R.C.") section 6072(a) and $12,866 for inaccurately reporting his withholding credits, expense and NOL deductions.

For the 1990 tax year the IRS determined that Overton owed the United States a total of $14,451. Id. The IRS concluded the following: Overton overstated his expense and NOL deductions by $72,670 and $33,147, respectively. The IRS found that based on these figures Overton's tax was deficient in the amount of $11,561. The IRS added $2,890 in penalties to this amount—$578 for filing late and $2,312 for inaccurately reporting his expense and NOL deductions.

Overton responded to the IRS' March 1, 1993 Demand for Payment on March 2, 1993 and March 30, 1993. In his letters, he claimed the IRS violated I.R.C. § 6213(a), which prohibits assessment and levy of a deficiency within 90 days of the mailing of a Notice of Deficiency. Overton claimed that the reversal of the withholding credits was included within the IRS' February 10, 1993 Notice of Deficiency and, as such, the IRS issued its Demand for Payment before the 90 day period had run. In a letter dated May 20, 1993, the IRS explained that the reversal did not create or constitute a "deficiency." The IRS explained to Overton that the reversal and the newfound

deficiencies were unrelated matters. Thus, the I.R.C. section invoked by Overton was inapplicable to his situation.

Overton disputed (and continues to dispute) the IRS' reversal of his withholding credits and the redetermination of his tax liabilities for the 1989 and 1990 tax years. Overton filed a petition in the United States Tax Court regarding his 1989 and 1990 tax liabilities. His petition was dismissed by the Tax Court for failure to properly prosecute. The Tax Court entered an Order to that effect on February 14, 1996. See Def. Ex. D, Overton v. Commissioner, Doc. No. 9130-93. The Court also entered a Decision which found that Overton owed the deficiency set forth in Exhibit C. Id.

On July 1, 1996, the IRS assessed the taxes and penalties determined by the Tax Court, plus applicable interest. See Def. Ex. B. The IRS issued a Demand for Payment on that same date, and then issued a Notice of Intent to Levy on August 12, 1996. Id. None of Overton's money or property was actually seized in connection with the above Notice.

On June 11, 1998, IRS Revenue Officer Carlos Sanchez ("Sanchez") sent levies to nine banking institutions—including Safra National Bank and Advanta National Bank—in an effort to collect Overton's outstanding debt to the United States of what is now $198,891. See Def. Ex. G, Levy Information Printouts; Def. Ex. H. On August 10, 1998, the IRS received $99,411.85 from Safra National Bank. These are the only funds the IRS has received to date from the nine banking institutions. The IRS applied the $99,411.85 to Overton's 1989 tax liability. Id. See also Def. Ex. B, and Declaration of Carlos Sanchez. At no time has the IRS obtained any money from Overton's bank account at Advanta National Bank. Id.

On August 21, 1998, Overton filed a pro se Complaint seeking redress on twelve (12) separate counts for Certain Unauthorized Collection Action taken in collecting his 1989 and 1990 income tax liabilities. See Pltf. Complaint. These counts fall into four broadly defined groups. First, Overton seeks relief for the "illegal seizure of [his] retirement account at Advanta National

Bank." See Pltf. Comp., Counts 1, 4 and 6. Second, he seeks relief for inadequate and untimely levy and demand for payment notices. Id., Counts 2, 7 - 12. Third, he seeks relief for the IRS demanding payment of a court-awarded refund. Id., Count 3. And fourth, he seeks relief for the IRS demanding a sum greater than what is authorized by law. Id., Count 5. Overton seeks to enjoin the United States from assessing and collecting federal income taxes for the 1989 and 1990 tax years. In addition, Overton requests a refund of any monies seized from his bank accounts, and $1,303,620.52 in actual damages, plus interest on that amount dating from August 1, 1998, and attorney's fees.

## I. THE UNITED STATES' MOTION TO DISMISS

### A. *The United States' Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction*

The United States moves under Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss Overton's Complaint for lack of subject matter jurisdiction. See Def. Motion to Dismiss. The United States contends that the Court cannot adjudicate Overton's Complaint because of the doctrine of sovereign immunity. This doctrine stands for the proposition that the United States, as sovereign, cannot be sued in any court without its consent. See United States v. Testan, 424 U.S. 392, 399 (1976). Its waiver of immunity "cannot be implied but must be unequivocally expressed" through a statute enacted by Congress. Id. The "terms of the sovereign's consent to be sued in any court define that court's jurisdiction to entertain the Suit." See United States v. Sherwood, 312 U.S. 584, 586 (1941). Accordingly, "[t]he absence of such consent is a jurisdictional defect." See Kulawy v. United States, 917 F.2d 729, 733 (2nd Cir. 1990).

#### 1. Plaintiff's Failure to Allege Subject Matter Jurisdiction

The United States contends that one condition of the sovereign's consent to be sued is that Overton bears the burden of showing the Court has the power to hear his case. See Penteco Corp.

4

v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir. 1991). The United States argues that Overton has not met his burden because he has "cited no jurisdiction for the Court to hear this case. . ." See Def. Motion at 7.

In his Complaint, Overton asserts jurisdiction on the basis of I.R.C. § 6241. He claims that "this section creates a civil cause of action against the government for damages due to unreasonable action by the Internal Revenue Service." See Pltf. Comp. at 3. He further claims that if he is successful in proving that an IRS employee recklessly or intentionally disregarded any provision of the I.R.C. in connection with the collection of his tax liability for the 1989 or 1990 tax years, he is entitled to "costs" and any "actual, direct economic damages" he has sustained therefrom. Id.

Section 6241 of the I.R.C. creates no such cause of action nor does it provide such a remedy. Instead, it pertains to the treatment of partnership items and deductions. See I.R.C. § 6241. The United States argues that because this section is completely unrelated to the alleged transgressions, Overton's Complaint should be dismissed for failure to establish jurisdiction. "[A]bsent a showing that sovereign immunity has been waived, the Complaint is subject to dismissal." See Def. Motion at 7.

The United States' argument is unpersuasive. In deciding the United States' 12(b)(1) motion, I must liberally construe Overton's pro se pleadings and hold them to a less stringent standard than formal pleadings drafted by lawyers.[1] See Haines v. Kerner, 404 U.S. 519, 520-521 (1972). The reason for this liberal construction is that "a pro se complaint provides an unsatisfactory foundation for deciding the merits of important questions because typically it is inartfully drawn, unclear, and

---

[1] The Haines rule applies to all proceedings involving a pro se litigant, including summary judgment proceedings. See Overton v. United States, 925 F.2d 1282 (10th Cir. 1990) (liberally construing pro se pleadings in review of summary judgment).

5

equivocal." See Estelle v. Gamble, 429 U.S. 97, 112 (1976). Thus, if a court can "reasonably read the pleadings to state a valid claim on which [Overton] could prevail, it should do so despite [Overton's] failure to cite proper legal authority..." See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991).

I find that a broad reading of Overton's pleadings yields a basis for subject matter jurisdiction. The Court has original jurisdiction of:

> "Any civil action against the United States for the recovery of any income tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."

See 28 U.S.C. § 1346(a)(1). Adding substance to this general grant of jurisdiction is I.R.C. § 7433. Section 7433 of the I.R.C. permits taxpayers to seek civil damages for certain unauthorized collection actions. That is precisely the relief Overton seeks. Furthermore, the language contained within § 7433 is repeated verbatim in Overton's Complaint.

I interpret Overton's Complaint to invoke I.R.C. §§ 1346(a)(1) and 7433(a) in a manner sufficient to establish subject matter jurisdiction. These I.R.C. sections effectively waive the sovereign's immunity to suit when their conditions are met. Hence, the United States' motion to dismiss Overton's Complaint for failing to cite proper legal authority in support of jurisdiction should be **DENIED**.

### 2. The Statute of Limitations

The United States' contends that another condition of the sovereign's consent to be sued is compliance with the applicable statute of limitations. See United States v. Dalm, 494 U.S. 596, 608 (1990). The United States moves to dismiss Counts 2 and 3 of Overton's Complaint for failure to

6

prosecute them within the period specified in the statute of limitations. See Def. Motion at 10. In deciding a Rule 12(b)(1) motion of this nature, a court may consider evidence outside the pleadings without converting the motion to dismiss into one for summary judgment. Id. Where the motion goes beyond a facial attack on the sufficiency of jurisdictional allegations, a court does not accord any presumptive truthfulness to the factual allegations in the complaint. Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir. 1987). A court may resolve factual disputes in deciding whether the facts sustain jurisdiction. Id. If the statute of limitations has run, the court is without jurisdiction to entertain—and must therefor dismiss—claims that are time-barred. See Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974).

### a) Count 2—Improper Demand for Payment

In Count 2 of his Complaint, Overton alleges the IRS violated I.R.C. §§ 6213(a) and 7214(a)(2).[2] Section 6213(a) requires the IRS to, inter alia, wait ninety (90) days after mailing a Notice of Deficiency before issuing a Demand for Payment. Overton claims the IRS violated this provision when it issued a Demand for Payment on March 1, 1993, which was within ninety (90) days of the date it issued a Notice of Deficiency on February 10, 1993.

The United States argues that even if Overton's factual averments are deemed to be true, Overton's Count 2 claim fails because he "waited too long" to bring it. See Def. Motion at 10. In support of its argument, the United States' points to I.R.C. § 7433(d)(3), which mandates that any action for civil damages for unauthorized collection actions taken by an IRS officer must be brought "within 2 years after the date the right of action accrues." If Overton had an actionable claim against

---

[2] Overton has no private cause of action under I.R.C. § 7214(a)(2), which is a criminal statute that makes it illegal for an IRS officer to knowingly demand more money than authorized by law.

the United States when the IRS issued a Demand for Payment on March 1, 1993, Overton was required to seek relief by March 1, 1995. Overton did not file his Complaint until August 21, 1998—well outside of the two-year limitations period. Hence, the United States' motion to dismiss Count 2 of Overton's Complaint should be **GRANTED** on the ground that the statutory time bar precludes subject matter jurisdiction..

### b) Count 3—Improper Demand for a Court-Ordered Refund

In Count 3 of his Complaint, Overton alleges the IRS violated I.R.C. § 7214(a)(2) by "demanding a payment for a court-ordered refund for a previous tax year." Pltf. Comp. at 5. Overton refers to the refund check the IRS issued to him in the amount of $33,812 for the withholding credits he claimed in his 1989 tax return. Pltf. Response at 1-2. Overton claims the IRS has "knowingly demand[ed] other or greater sums than are authorized by law" by assessing and levying against that refunded amount. See I.R.C. § 7214(a).

Overton contends that on July 29, 1993, the United States Court of Appeals for the Ninth Circuit entered a Memorandum Opinion and Order ("Memorandum") which confirmed a lower court's decision requiring the IRS to give him a refund in the amount of $33,812. See Pltf. Response at 1-2; Overton v. United States, No. 90-35686, 1993 WL 285888 (9th Cir. July 29, 1993). Overton claims the IRS' ongoing attempt to collect that refund violates I.R.C. § 7214(a). He asserts that Count 3 is not time-barred because the IRS attempted to garnish his refund as recently as August 10, 1998, when it seized funds from one of his bank accounts.

The United States argues that Count 3 should be dismissed because it pertains to "some action occurring in or before 1993" and is therefore "untimely." See Def. Motion at 10.

In addition, the United States challenges Overton's factual allegations on two other grounds. First, the United States challenges Overton's allegation that the District Court for the Eastern District

of Washington (C-83-878-RJM) awarded him a refund. Second, it challenges Overton's allegation that the Ninth Circuit confirmed the district court's purported "refund."

The Ninth Circuit Memorandum Overton refers to in his Complaint reveals that Overton's claim before the district court centered around his disputed tax liability for the years 1975, 1977, 1978, 1979 and 1981. See Overton, 1993 WL 285888 at *1. The Ninth Circuit Memorandum states that Overton "sought refunds for the alleged overpayments. . .for those years," and that the district court dismissed Overton's case as moot after he received a check from the IRS "which he said represented the refund amounts he had demanded, plus interest." Id.

The Ninth Circuit's Memorandum supports the United States' contention that the IRS never demanded from Overton a payment for a court-ordered refund for a previous tax year. Neither the district court nor the Ninth Circuit ever awarded Overton a refund in the amount of $33,812, or any other amount; the district court dismissed Overton's refund claim as moot, and the appellate court affirmed. The $33,812 the United States now seeks derives from the IRS' decision in 1993 to reverse the withholding credits Overton claimed on his 1989 tax return. See Def. Ex. F. The $33,812 is unrelated to the purported "refund" Overton received "as the result of. . .prevailing in a previous case." See Pltf. Response at 1.

Even if the IRS' decision to reverse Overton's withholding credits for the 1989 tax year is deemed to be a demand for payment of a court-ordered refund, Overton's Count 3 claim is barred because he failed to file his Complaint in a timely manner. The two-year statute of limitations started to run when Overton was first notified that his withholding credits for the 1989 tax year had been erroneously awarded. See Gonsalves v. United States, 782 F.Supp. 164 (D.Me. 1992). Overton received that notice on March 1, 1993, at the latest. Accordingly, he had to seek relief by March 1, 1995. Overton did not file his Complaint, however, until August 21, 1998—well outside of the time

9

specified in I.R.C. § 7433(d)(3). Hence, the United States' motion to dismiss Count 3 of Overton's Complaint should be **GRANTED**.

*B. The United States' Rule 12(b)(6) Motion to Dismiss for Failure to State an Actionable Claim*

The United States moves to dismiss Counts 1 through 4 and Counts 7 through 11 of Overton's Complaint for failure to state a claim upon which relief can be granted.[3] The United States' 12(b)(6) motion should not be granted "unless it appears beyond doubt that [Overton] can prove no set of facts in support of his claim which would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Through its 12(b)(6) motion, the United States may test whether, as a matter of law, Overton "is entitled to legal relief even if everything alleged in the complaint is true." See Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). Thus, in deciding the United States' motion, I must presume that all of Overton's factual allegations are true. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). I must also construe Overton's factual allegations in a light most favorable to Overton. Id.

The court's required liberal reading of a pro se complaint does not relieve a pro se plaintiff of the burden of alleging sufficient facts as the basis for a recognized legal claim. See Hall v. Bellmon; Haines v. Kerner. Thus, conclusory allegations that are not supported by factual allegations do not state a claim on which relief can be granted. See Dunn v. White, 880 F.2d 1188, 1197 (10th Cir.1989). I must accept as true only Overton's well-pleaded factual averments; I need not accept his conclusory allegations. Id.

### 1. Counts 1 and 4—Alleged Illegal Seizure of Overton's Retirement Account from Advanta National Bank, while Overton had a Dispute Pending in Tax Court

Overton alleges in Counts 1 and 4 that the IRS violated I.R.C. § 6213(a) when it seized

---

[3] Since Counts 2 and 3 of the Complaint will be dismissed for lack of subject matter jurisdiction, I have not analyzed them in connection with the United States' 12(b)(6) motion.

$99,533.61 from his retirement account at Advanta National Bank while his tax liability was being disputed in the United States Tax Court. Section 6213 provides, in relevant part, that the IRS cannot assess a deficiency or levy against a taxpayer's property while the taxpayer has a petition pending before the Tax Court. See I.R.C. § 6213(a). Only after the Tax Court's decision has become final may the IRS proceed against a taxpayer in its effort to collect any outstanding balance. Id.

The United States challenges Overton's factual averments on two grounds. First, the United States denies the IRS seized any money while Overton's case was before the Tax Court. Second, the United States denies that the money the IRS seized was from Overton's retirement account at Advanta National Bank. However, I cannot consider these challenges in deciding the United State's 12(b)(6) motion. Instead, I must assume that all well-pleaded facts in Overton's Complaint are true.

In light of the liberal pleading standards that apply to the review of the United States' 12(b)(6) motion, I conclude that Overton alleges facts that support a cause of action against the United States under I.R.C. § 6213(a). Overton alleges the IRS assessed and levied against his property to satisfy his disputed tax liability for the 1989 and 1990 tax years while his tax liability was before the Tax Court for consideration. These are factual averments upon which relief can be granted. Hence, the United States' 12(b)(6) motion to dismiss Counts 1 and 4 should be **DENIED**.

### 2. Counts 7 – 11—Alleged Insufficient Notice of Intent to Seek to Obtain Records from Third-Party Recordkeepers

In Counts 7 through 11 of Overton's Complaint, he alleges that an IRS Revenue Officer violated I.R.C. § 7609 by sending notices of levy to Overton's banking institutions without timely notifying Overton as required by statute.[4] Section 7609 of the I.R.C. sets forth the manner in which third-party "summonses" are to be issued. The statute states, in relevant part:

---

[4] It is unclear from Overton's pleadings who he accuses of sending what he calls the "summonses." It appears that he is referring to the notices issued by Revenue Officer Carlos Sanchez to nine banking institutions on June 11, 1998.

> If. . .any summons described in *subsection (c)* is served on any person who is a third-party recordkeeper, and the. . .summons requires the production of any portion of records made or kept of the business transactions or affairs of any person. . .who is identified in the description of the records contained in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made. . .(emphasis added).

The United States challenges the characterization of the notices of levy as "summonses." The United States contends, however, that even if the notices of levy are deemed to be "summonses" within the meaning of § 7609, the IRS did not violate the statute's notice requirement when it issued the notices to the nine banking institutions. The United States contends that such "summonses" are exempt from § 7609(a)(1).

In support of its contention, the United States cites to the caveat in § 7609(a)(1)(A), which provides that *only* those summonses described in *subsection (c)* of section 7609 must comply with the statute's notice requirement. Subsection (c) states, in relevant part:

> A summons shall not be treated as described in this subsection if. . .it is in the aid of the collection of. . .the liability of any person against whom an assessment has been made or judgment rendered. . .(italics added)

The language of § 7609(c)(2)(B) indicates clearly that Overton was not entitled to notice when the IRS issued "summonses" in the form of notices of levy to his banking institutions. See, e.g., Spearbeck v. United States, 846 F.Supp. 47, (W.D.Wash. 1993). The parties agree on the facts that pertain to the "subsection (c)" exception to section 7609's general notice requirement. First, the parties agree that the notices of levy were sent to the nine banking institutions in an effort to collect Overton's tax liability for the 1989 and 1990 tax years. See Pltf. Comp. at 4. Second, the parties do not dispute that the notices of levy were issued only after the IRS had made an assessment against Overton. Id. Hence, the United States' motion to dismiss Counts 7 through 11 of Overton's Complaint for failure to state a claim should be **GRANTED**.

## II. THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

The United States' moves for summary judgment under Rule 56(a) on Counts 1, 4, 5, 6 and 12 of Overton's Complaint. The United States is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [United States] is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). A genuine issue of fact is one that "might affect the outcome of the suit under the governing law." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The proper inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that [the United States] must prevail as a matter of law." Id. at 251.

The United States bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). This burden may be met by demonstrating "there is an absence of evidence to support [Overton's] case." Id. If the United States properly supports its 56(a) motion, the burden then shifts to Overton to demonstrate that genuine issues remain for trial "as to those dispositive matters for which he carries the burden of proof." Id. Overton "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." See Anderson, 477 U.S. at 256. It is not enough that the evidence, viewed in the light most favorable to Overton, is "merely colorable" or anything short of "significantly probative." Id. at 249-250. This is true because when "the record taken as a whole could not lead a rational trier of fact to find for [Overton], there is no genuine issue for trial." See Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Id.

13

### 1. Counts 1 and 4—Alleged Illegal Seizure of Overton's Retirement Account from Advanta National Bank, while Overton had a Dispute Pending in Tax Court

The United States contends that when the IRS seized $99,411.85 from Overton's account at Safra National Bank on August 10, 1998 any litigation before the Tax Court concerning Overton's tax liability for the 1989 and 1990 tax years had already been adjudicated. The United States is correct.

An examination of the Tax Court's Order and Decision in <u>Overton v. Commissioner</u>, Docket No. 9130-93 (Tax Court 1996) reveals that Overton did not have a case pending before the Tax Court on August 10, 1998. The Tax Court's Order, entered February 14, 1996, granted the Commissioner's motion to dismiss Overton's Complaint for failure to properly prosecute. <u>See Def. Ex. D</u>. Overton's case in the Tax Court had been dismissed more than two years before the IRS levied on Overton's account at Safra National Bank.

Overton attempts to buttress his allegation that his petition is still pending before the Tax Court by stating that he has appealed the dismissal of his case to the Fifth Circuit. However, the appeal to which Overton refers was dismissed on April 20, 1994. The Fifth Circuit dismissed whatever Overton had appealed long before the 1996 dismissal of his case in Tax Court.

The Fifth Circuit obviously did not review the Tax Court's February 14, 1996 final disposition. Overton has failed to provide any evidence to support his allegation that he had a case pending in the Tax Court (or any other court for that matter) when the IRS seized $99,411.85 from his account at Safra National Bank on August 10, 1998. Consequently, the United States' motion for summary judgment on Counts 1 and 4 of Overton's Complaint should be **GRANTED**.

### 2. Count 5—Alleged Knowingly Demanding Sum Greater than Authorized by Law

In Count 5 of his Complaint, Overton claims that an IRS Revenue Officer violated I.R.C.

§ 7214(a)(2) by knowingly demanding a greater sum than that authorized by law. Overton complains that at some unspecified point the IRS demanded $182,811.02, a sum which far exceeds the $42,080.00 he claims is in dispute.[5]

Overton's position is without merit. When the IRS reversed the $33,812 in withholding credits Overton had claimed for the 1989 tax year, it also reexamined his 1989 and 1990 tax liabilities. The IRS determined that Overton owed the United States an additional $44,911 for the 1989 tax year, and an additional $14,451 for the 1990 tax year. The IRS sent Overton a summary of his balance due as of November 4, 1997 (which accounted for additional interest, penalties and interest on penalties), giving him a detailed accounting of his outstanding balance. In fact, the IRS presented Overton with the following table, which demonstrates how Overton's balance grew from $42,080.00 to $182,811.02:

### 1989

| | |
|---|---|
| Erroneous refund of income tax withholding | $ 33,812.00 |
| Interest due on erroneous refund | $ 9,824.97 |
| Tax Increase – per Tax Court decision | $ 30,519.00 |
| Delinquency penalty – per Tax Court decision | $ 1,526.00 |
| Negligence penalty – per Tax Court decision | $ 12,866.00 |
| Failure-to-pay penalty through 11/04/97 | $ 4,833.40 |
| Accrued Interest through 11/04/97 | $ <u>63,290.70</u> |
| Balance due per Notice of Levy | $156,722.07 |

### 1990

| | |
|---|---|
| Tax Increase – per Tax Court decision | $ 11,561.00 |
| Delinquency penalty – per Tax Court decision | $ 578.00 |
| Negligence penalty – per Tax Court decision | $ 2,312.00 |
| Failure-to-pay penalty through 11/04/97 | $ 924.88 |
| Accrued Interest through 11/04/97 | $ <u>10,713.07</u> |
| Balance due per Notice of Levy | $ 26,088.95 |

The sum of the outstanding balances—$182,811.02—is the amount of money the IRS notified Overton that he owed as of November 4, 1997. This total is accurate and well-based in law. See

---

[5] Overton does not explain why he believes the amount in dispute is $42,080.00. It appears to be the total of the tax deficiencies for the 1989 and 1990 tax years, as set forth in Defendant's Exhibit C.

Def. Ex. H; I.R.C. §§ 6601 and 6651. The amount of money the IRS claims Overton now owes includes interest and penalties that have accrued since November 4, 1997. Overton has failed to set forth any facts contesting the accuracy of the figures presented by the United States. Hence, the United States' motion for summary judgment on Count 5 of Overton's Complaint should be **GRANTED**.

### 3. Count 6—Alleged Improper Seizure of Overton's Retirement Account from Advanta National Bank

In Count 6 of his Complaint, Overton alleges the IRS violated I.R.C. § 6241 when it seized his retirement account at Advanta National Bank.[6] He argues that retirement funds are normally exempt from levy except under very special circumstances.[7]

The United States disputes Overton's factual allegation that the IRS seized Overton's retirement funds from his account at Advanta National Bank. The United States cites to Defendant's Exhibit B ("Certificate of Assessments and Payments") and the Declaration of Carlos Sanchez which clearly establish that the IRS has at no time seized any of Overton's money from Advanta National Bank. In fact, they show that the only money the IRS has seized to date is the $99,411.85 it received from Safra National Bank on August 10, 1998.

Exhibit B and Sanchez's Declaration are sufficient to shift to Overton the burden of demonstrating that genuine issues of material fact remain for trial. Overton has failed to meet that burden. Overton did not challenge the veracity of Exhibit B or Sanchez's Declaration. Overton simply states that "a levy was sent to Advanta National Bank to levy on [his] retirement account at

---

[6] Although Overton once again invoked I.R.C. § 6241, I assume he means I.R.C. § 7433.

[7] In his Complaint, Overton seems to suggest that the IRS did not follow its own internal operating procedures when it decided to levy against his retirement account at Advanta National Bank. If that is the action Overton complains of, this Court does not have jurisdiction to hear Count 6. *See* Gonsalves, 782 F.Supp. at 171.

16

that bank." See Pltf. Response at 3. Overton did not set forth any specific or verifiable facts showing the IRS recovered any money from Advanta National Bank. Since there is no genuine factual issue, the United States is entitled to summary judgment.

Alternatively, the United States contends that even if the IRS had seized money from Overton's retirement account at Advanta National Bank, the United States would nevertheless still ve entitled to judgment as a matter of law. See Def. Ex. H. The United States argues that the IRS is not prohibited by the I.R.C. or any other law from assessing, levying against or seizing a taxpayer's retirement funds. In support of this argument, the United States relies upon I.R.C. § 6334(a).

Section 6334(a) of the I.R.C. sets forth an *exclusive* list of property and property rights which are exempt from levy. Included in this list are unemployment benefits, worker's compensation, certain public assistance payments, annuity/pension payments under the Railroad Retirement Act and certain military pensions. See I.R.C. §§ 6334(a) and 6334(c). General retirement benefits such as IRAs, self-employed Keough plans, thrift savings plans and Social Security benefits are not included within § 6334(a)'s exclusive list. Accordingly, I conclude that even if Overton's factual averments about seizure of money from Advanta National Bank were true, the United States still would be entitled to a judgment in its favor. The United States' motion for summary judgment on Count 6 of Overton's Complaint also should be **GRANTED**.

4. **Count 12-Alleged Insufficient Notice of Intent to Levy Prior to Seizing Property**

In Count 12 of his Complaint, Overton claims the IRS violated the I.R.C.'s notice requirements when it failed to give him at least thirty (30) days notice of its intent to levy before seizing his property. Overton does not indicate in his Complaint the amount, date or place of the

seizure he is referring to. However, because the IRS has seized Overton's property on only one occasion, I assume Overton complains that the IRS failed to give him at least thirty (30) days notice of its intent to levy when it seized the $99,411.85 from Overton's bank account at Safra National Bank on August 10, 1998.

In his Declaration, Carlos Sanchez states under penalty of perjury that he sent Overton a Final Notice of Intent to Levy on May 6, 1998, more than sixty (60) days before the seizure. This notice informed Overton that the IRS intended to levy on his accounts in order to collect Overton's outstanding tax liabilities for the 1989 and 1990 tax years. See Declaration. Exhibit B shows that two final notices of intent to levy--which are referred to as fourth delinquency notices in the exhibit--were sent to Overton on March 22, 1993, and on August 12, 1996 See Def. Ex. B.

This evidence demonstrates that Overton received adequate notice of the IRS' intent to levy on his property in an attempt to collect his outstanding tax liability for the 1989 and 1990 tax years. See J.J. Camacho, BC-DC Alas., 95-1 USTC ¶50,315. Section 6330(a)(1) of the I.R.C. states, in relevant part, that "notice (of intent to levy) shall be required only once for the taxable period to which the unpaid tax. . .relates." See I.R.C. § 6330(a)(1). Overton was given multiple notices. Hence, the United States' motion for summary judgment on Count 12 of Overton's Complaint should be **GRANTED**.

**THEREFORE,**

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. Defendant's motion to dismiss Counts 2 and 3 of Plaintiff's Complaint for lack of subject matter jurisdiction is hereby **GRANTED**;

2. Defendant's motion to dismiss Counts 1 and 4 of Plaintiff's Complaint for failure to state a claim upon which relief can be granted is hereby **DENIED**;

18

3. Defendant's motion to dismiss Counts 7 through 11 of Plaintiff's Complaint for failure to state a claim upon which relief can be granted is hereby **GRANTED**; and

4. Defendant's motion for summary judgment on Counts 1, 4, 5, 6 and 12 of Plaintiff's Complaint is hereby **GRANTED**.

_____
UNITED STATES DISTRICT JUDGE